In the Matter of FIRST HOME INVEST-
MENT CORPORATION OF
KANSAS, INC., Debtor.

No. 24075–B–2.

United States District Court,
D. Kansas.

Dec. 3, 1973.

598

David Bush, pro se.

Fred Beaty, Wichita, Kan., for James M. Dysart.

Michael G. Quinn, Wichita, Kan., for debtor Corporation.

Ronald P. Kane, Chicago, Ill., Robert J. Roth, U. S. Atty., D. Kan., Wichita, Kan., for S. E. C.

*Findings Of Fact, Conclusions Of Law, And Order Enjoining Solicitations Of Investors And For An Accounting*

WESLEY E. BROWN, Chief Judge.

This matter came before the Court for hearing on November 30, 1973, pursuant to a Temporary Restraining Order and Order To Show Cause on application of the Securities and Exchange Commission Re: Enjoining Solicitation of Shareholders And Face Amount Certificate Holders And for An Accounting. The Temporary Restraining Order and Order To Show Cause was entered on November 23, 1973. The Court heard the statements and arguments of Messrs. Ronald P. Kane and Steven

Watson, attorneys for the Securities and Exchange Commission, Mr. Fred Beaty, attorney for James M. Dysart, and Mr. David Bush, pro se. The Court also heard the testimony of the following: Louis Clinton Burr, Olga T. Cushman, William Porter, James M. Dysart, and David Bush.

Being fully advised of the foregoing, the Court finds, concludes and adjudges as follows:

### Findings of Fact

1. The Application of the Securities and Exchange Commission alleges that James M. Dysart, David Bush, S.O.S. Fund, and Central Committee for FHI Stockholders and Creditors (hereinafter referred to as Respondents) have solicited funds from FHI investors in violation of this Court's exclusive jurisdiction to determine the amount of all fees and allowances which may be collected by a committee not only from the Debtor's estate, but also from all other sources. Sections 211, 212, 221(4), 242(1) and (2) (11 U.S.C. Sections 611, 612, 621(4), 642(1)(2)).

2. The Application of the Securities and Exchange Commission further alleges that Respondents have solicited funds and authorizations from investors in violation of Section 14 of the Securities Exchange Act of 1934 (15 U.S.C. Section 78n) and Regulation 14A and 14B promulgated thereunder (17 CFR 240.14A) and Section 20(a) of the Investment Company Act of 1940 (15 U.S. C. Section 80a–20) and the rules and regulations promulgated thereunder.

3. The solicitations of FHI investors involved the use of the U.S. mails and other instrumentalities of interstate commerce.

4. David Bush, former president and chairman of the board of FHI, since the filing of the Chapter X petition, has addressed groups of FHI investors in, but not limited to, Des Moines, Iowa; Denver, Colorado; Minneapolis, Minnesota; and Wichita, Kansas. At these meetings Respondent Bush personally requested that investors send funds to Dave Bush, 130 Riviera Drive, Riviera Beach, Florida. Respondent Bush stated that the purpose of such funds would be, among other things, to retain legal representation for the investors, in order to have these Chapter X proceedings dismissed.

5. During the course of such meetings, Respondent Bush would play a tape recording of James M. Dysart, Ed.D., a professor of Business Administration at Palm Beach Atlantic College, in West Palm Beach Florida. Respondent Dysart is Chairman of the Central Committee for FHI Stockholders and Creditors and administrator of the S.O.S. Fund (save our savings). At these meetings, Respondent Dysart would request that investors contribute one per cent of their investment to this Central Committee in Florida, in order to obtain legal representation in the Chapter X proceedings. Respondent Dysart also suggested that local committees be formed which could work in coordination with the Central Committee.

6. At these meetings, forms for filing Section 211 statements were distributed, or were caused to be distributed, by Respondent Bush. Attached to these forms was a request to investors for contributions which stated, *inter alia*: "I (we) have enclosed or send under separate cover my (our) contribution of $_____ to cover expenses such as mailing and legal fees."

7. The purpose of this Florida Central Committee, organized and/or promoted by Respondents Bush and Dysart, as stated in material distributed to investors, was to supply local committees with forms for court filings and to obtain and direct legal representation.

8. During the course of such meetings, Respondent Bush distributed or caused to be distributed to investors other material which contained false and misleading statements of material facts or omitted to state material facts. Several examples of such material will be set forth below.

9. Subsequent to these meetings, Respondent Dysart distributed to investors, through the mails, a request for a contribution of 1% of their investment to be sent to S.O.S. Fund, Account No. 930–72–7, c/o First National Bank, Riviera Beach, Florida 33404.

10. Subsequent to such meetings, Respondent Dysart, aided by Respondent Bush, caused to be distributed to investors, through the U.S. mails, certain material which also contained false and misleading statements of material facts or omitted to state material facts.

11. Without enumerating each and every misstatement of material fact or omission thereof by Respondents, the following paragraphs will set forth a few examples of such misstatements.

(a). Respondent Bush, at these investor meetings, and Respondents Bush and Dysart, through use of the U.S. mails, distributed or caused to be distributed a document captioned "Position Paper of the FHI Stockholders' Committee." Respondent Dysart testified that he prepared this document and that his only source of reference was Respondent Bush.[1] The first and second paragraphs of this document state that FHI is the victim of the Securities and Exchange Commission, who has charged it with unintentional and minor infractions of the securities statutes. It fails to state that the charges were against Bush & Co. and its officers and directors, not FHI, and that Bush & Co. admitted to the violations. Moreover, it fails to state that the Chapter X petition was a voluntary one, signed and verified by David Bush after a unanimous vote by the board of directors of FIII.

(b). This document proceeds to laud the virtues of Respondent Bush and further states that the Trustee "has produced a recommendation for reorganization which includes naming a new Board of Directors of his own choosing, with himself to be appointed as a permanent member of the management group. The new management would retain majority control and be able to operate the company as it saw fit, while the rights and privileges of the stockholders would be ignored and obviated." This statement, disseminated to over 20,000 FHI investors, is so blatantly false that it deserves little comment. The Trustee had filed a proposed plan which calls for this Court, not the Trustee, to appoint a board of directors. It does not contain a provision appointing the Trustee as a permanent member of the management group nor does it obviate the rights of shareholders. Respondent Dysart testified that he had not read the Trustee's proposed plan, even though it is in the court files, but had relied on the veracity of the Respondent Bush in preparing this document.

(c). Respondents Bush and Dysart also distributed or caused to be distributed, either at these investor meetings or through the U.S. mails a document captioned *"Facts About FHI."* This document states that the Trustee has hired United First Mortgage Co. to service mortgages for $25,000 per month. This information is false, in that the average monthly payment to United has averaged approximately $20,000 per month. The document also states that financials filed by the Trustee "disclose a total investors loss of $121,202 on a gross income of $2,641,265. Based on the way FHI operated prior to the Trustee it would have shown over $4,000,000 in profit." This is particularly interesting, in light of the fact that no information is given as to how this figure was arrived at, nor to the fact that in the past, FHI has never shown a profit of more than one million dollars. The record presented is replete with similar false statements of material facts and omissions, thereof, which are designed to create confusion and distrust in the minds of investors.

---

1. After the hearing Respondent Dysart submitted a letter indicating that he had seen copies of records from the Court's file (Dkt 499).

12. Respondents Bush and Dysart also distributed or caused to be distributed to investors at these meetings and/or through the U.S. mails, a "Motion To Dismiss Petition Under Chapter X," which has been filed in this Court by Respondent Bush. This document requests investors to vote as to whether or not they are in favor of the dismissal. This information is to be sent to James M. Dysart, P.O. Box 9967, Riviera Beach, Florida 33404.

13. On the basis of the foregoing and the entire record, it appears that Respondents Dysart and Bush are acting in concert, using these Regional and Central Committees as conduits for Respondent Bush's defense to charges placed against him by the Securities and Exchange Commission in another proceeding.

## CONCLUSIONS OF LAW

1. This action arises under Sections 211, 212, 213, 221(4), 242(1) and (2), and 247 (11 U.S.C. Sections 611, 612, 613, 621(4), 642(1)(2), 647) and Section 14 of the Securities Exchange Act of 1934 (15 U.S.C. section 78n) and Regulations 14A and 14B promulgated thereunder (17 CFR 240.14A and B) and Section 20(a) of the Investment Company Act of 1940 (15 U.S.C. Section 80a–20) and the rules and regulations promulgated thereunder.

2. Section 211 provides that every committee or other person representing more than twelve creditors or stockholders who appear in the proceedings must file with the Court, *inter alia*, a copy of the instrument authorizing representation and a recital of the pertinent facts and circumstances pertaining to their employment. After filing pursuant to Section 211, the committee may petition the Court for allowance of expenses, and, in a proper case, for compensation. This may be done pursuant to Section 242 (11 U.S.C. Section 642), which permits this Court to allow reasonable compensation where specified beneficial services have been rendered or expenses incurred. This section is specifically applicable to protective committees under Sections 242(1) and (2). Such allowances may be made only after notice and hearing, as required by Section 247 of the Bankruptcy Act (11 U.S.C. Section 647).

3. In the instant case, although James M. Dysart has filed a purported "211" statement, no compliance has been made, by any Respondent, with Sections 242(1) and (2) or Section 247. Therefore, Respondents, by soliciting FHI investors for contributions to their Committee have violated this Court's exclusive jurisdiction and control over compensation for such services and reimbursement of such expenses, not only from Debtor's estate, but from all other sources. See Section 221(4) and Leiman v. Guttman, 336 U.S. 1, 69 S.Ct. 371, 93 L.Ed. 453 (1948) and Halsted v. Securities and Exchange Commission, 86 U.S.App.D.C. 352, 182 F.2d 660 (1950), cert. denied, 340 U.S. 834, 71 S.Ct. 68, 95 L.Ed. 612.

4. Section 212 provides that:

"The judge may examine and disregard any provision of a deposit agreement, proxy, power or warrant of attorney, trust mortgage, trust indenture, or deed of trust, or committee or other authorization, by the terms of which an agent, attorney, indenture trustee, or committee purports to represent any creditor or stockholder, may enforce an accounting thereunder, may restrain the exercise of any power which he finds to be unfair or not consistent with public policy and may limit any claim or stock acquired by such person or committee in contemplation or in the course of the proceeding under this chapter to the actual consideration paid therefor."

Therefore, under Section 212, this Court has the power to set aside any agreements entered into between Respondents and FHI investors and to require that an accounting be made by all Respondents for funds received from FHI investors as a result of these solicitations. This will be done.

■ 5. Section 213 of the Bankruptcy Act (11 U.S.C. Section 613) provides that the Court shall not allow a committee, purporting to represent creditors or stockholders, to be heard in the proceedings until such persons have complied with all other applicable laws. Respondents have not complied with certain provisions of the federal securities laws, as set forth below, and have, therefore, violated Section 213.

■ 6. The material disseminated by Respondents Dysart and Bush, Central Committee for FHI Stockholder and Creditors, and/or S.O.S. Fund, constitute a proxy within the meaning of Section 14 of the Securities Exchange Act of 1934 and Section 20(a) of the Investment Company Act of 1940. In strikingly similar circumstances, where a person or persons in a reorganization proceeding under the Public Utility Holding Act of 1934 solicited a contribution of 5¢ from each shareholder, the Court held:

"To construe the provisions of Section 12(e) as covering only the solicitation of 'any proxy, power of attorney, consent, or authorization' in haec verba would defeat the patent congressional intent to give the Securities & Exchange Commission a needed measure of control over the relationships between stockholders and persons who seek to represent them in reorganization proceedings." Halsted v. Securities and Exchange Commission, 86 U.S.App.D.C. 352, 182 F.2d 660, 664 (1950)

[See also Dyer v. SEC, 287 F.2d 773 (8th Cir. 1961); Rosen v. Alleghany Corporation, 133 F.Supp. 858 (S.D.N.Y., 1955); and Studebaker Corp. v. Gittlin, 360 F.2d 692 (2d Cir. 1966)]. All Respondents distributed material designed to solicit authorizations from investors to represent them in these proceedings; to obtain contributions from investors for this purpose; and to solicit their votes concerning the Motion to Dismiss filed by Respondent Bush.

Therefore, since Section 14(c) of the Securities Exchange Act of 1934 requires issuers of such proxies to file such information with the Securities and Exchange Commission and since this has not been done in the instant case, Respondents are in violation of Section 14(a) of the Securities Exchange Act of 1934 and Section 20(a) of the Investment Company Act of 1940.

■ 7. Rule 14a–9 (17 CFR 240.-14a–9) provides that:

"No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to 'any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false and misleading.'"

The material disseminated by Respondents in the instant proceeding is clearly violative of this anti-fraud rule.

■ 8. The activities of Respondents in soliciting a vote from FHI investors concerning Respondent Bush's Motion to Dismiss is also violative of Section 176 of the Bankruptcy Act (11 U.S.C. Section 576) which prohibits a person from soliciting any acceptance, conditional or unconditional, of any plan prior to the entry of an order approving such plan and its transmittal to creditors and stockholders.

■ 9. Section 2(a)(15) of the Bankruptcy Act (11 U.S.C. Section 11(a)(15), invests courts of bankruptcy with such authority in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings, including the power to

"make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this Act."

Thus, a Chapter X court has a breadth of powers to effect a reorganization. After hearing the evidence, this Court is of the opinion that, in addition to the foregoing, the activities of Respondents Bush and Dysart, in spreading false statements and misleading information of material facts, are disruptive to these reorganization proceedings and should be enjoined.

Wherefore, It Is Ordered, Adjudged And Decreed that the Respondents David Bush, James M. Dysart, Central Committee for FHI Stockholders and Creditors, and S.O.S. Fund, and their agents, affiliates, servants, employees and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them, be and are hereby preliminarily enjoined until further order of the Court from:

1. Directly or indirectly, soliciting monies or authorizations to represent from investors of FHI.

2. Directly or indirectly, soliciting such monies and/or authorization to represent, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, in contravention of the rules and regulations of the Securities and Exchange Commission concerning proxies.

3. Directly or indirectly, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, to make such solicitations, through either oral or written communication, containing statements which, at the time and in light of the circumstances under which it is made, are false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading.

4. Directly or indirectly, from interfering with the orderly administration of these Chapter X proceedings.

It Is Further Ordered, Adjudged, And Decreed that Respondents David Bush, James M. Dysart, Central Committee for FHI Stockholders and Creditors, and S. O.S. Fund and their agents, affiliates servants, employees and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, shall:

1. Submit to the Court an accounting for all monies heretofore or hereafter received by reason of their solicitation of monies from investors of FHI and for any and all disbursements of such monies, said accounting to be filed within 30 days;

2. Preserve intact the balance of monies heretofore or hereafter received as a result of the solicitation of FHI investors, and make no further disbursements of such monies, pending further order of this Court; and

3. That this Court retains jurisdiction to enter further orders as to disposition of monies heretofore or hereafter received by reason of solicitation of investors of FHI and to enter such further orders in this matter as may be just and equitable.